IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EDWARD E. RONKOWSKI, JR. and
JOANN RONKOWSKI,

                                OPINION AND ORDER

            Plaintiffs,

                                   17-cv-226-bbc

     v.

UNITED STATES OF AMERICA,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiffs Edward E. Ronkowski, Jr. and JoAnn Ronkowski own real property in Bayfield County, Wisconsin. They filed this suit against the United States of America under the Quiet Title Act, 28 U.S.C. § 2409a, seeking to: (1) quiet title on any claim by the United States for a purported easement or public access inside the boundaries of plaintiffs' property; and (2) confirm an access easement over a small segment of road on land owned by the United States Forest Service, an agency of the United States Department of Agriculture. Both sides have filed motions for summary judgment which are ready for decision. Dkt. ##11, 20.

I conclude that the United States has submitted a valid disclaimer to plaintiffs of any interest in the segment of road running across plaintiffs' property and therefore, this court has no jurisdiction over plaintiffs' first claim. With respect to the second claim, I conclude that plaintiffs have failed to show that they have an easement under any legal theory.

1

Therefore, I am granting defendant's motion for summary judgment in full and denying plaintiffs' motion.

From the parties' proposed findings of fact and responses, I find the following facts to be material and undisputed unless otherwise noted.

## UNDISPUTED FACTS

### A. The Parties' Property

Plaintiffs own approximately 120 acres of undeveloped real property in the Town of Drummond in Bayfield County, Wisconsin, identified as Township 44 North, Range 8 West and part of Section 12. Plaintiffs and their guests have used the property for a variety of recreational and sporting activities since plaintiffs acquired ownership of the property in 1972. Defendant United States owns the real property located directly to the north, east and south of plaintiffs' property.

### B. Historical Ownership of Plaintiffs' and Defendant's Property

In 1887, the Rust-Owen Lumber Company Limited acquired a large tract of land, including the property now owned by plaintiffs. In 1914, Rust-Owen acquired additional land adjacent to the property now owned by plaintiffs. In 1918, Rust-Owen transferred 80 acres of land to Tony Altobelli, and in 1919, it transferred an additional 40 acres of adjacent land to Altobelli, for a total of 120 acres. Ownership of the 120 acres changed over the years, but the entire 120 acres was deeded to plaintiffs and Josephine Ronkowski in 1972.

Josephine Ronkowski died in 2000, leaving plaintiffs as the exclusive owners of the 120 acres.

In 1935, Rust-Owen sold large tracts of land bordering plaintiffs' property to the United States. Defendant's property is now managed by the United States Forest Service as part of the Chiquamegon-Nicolet National Forest.



## C. Access to Plaintiffs' Property

The only road that reaches plaintiffs' property is a Forest Service road, FR822A, which enters plaintiffs' property near the southeast corner by way of land owned by defendant. At the southeast corner of plaintiffs' property, FR822A travels east through defendant's land for about half a mile, until shortly before the border of property owned by Eric Allen. FR822A then turns south until it reaches Oswald Road, a public road, at the southern border of the Forest Service land. At the point where FR822A turns south, a short access road connects FR822A through defendant's land, to a road that runs east-west through the private property owned by Eric Allen, just below the tip of the arrow shown on the photograph of the area. (Throughout this opinion, I will refer to this small portion of road on Forest Service land as the "access road." Plaintiffs' January 2018 survey shows the current location of the small access road. Dkt. #30-4. Although neither side states specifically the length of this access road, it appears from maps that it is only about 200 feet long.) The east-west road running through Allen's property eventually reaches Blue Moon Road, another public road.

Since acquiring the property, plaintiffs have gained access to their property several times a year by traveling from Blue Moon Road across Eric Allen's property and the small access road to the segment of FR822A that reaches their property. Allen has given plaintiffs a written easement that permits them to use the road on Allen's land. FR822A is a Forest Service road open to the public. Plaintiffs do not have any written easement or special use

permit to use the small access road owned by defendant.

Defendant has not spent money maintaining FR822A or the small access road. Over the years, plaintiffs have maintained the small access road by removing downed trees and branches, cutting saplings and brush on the roadside and filling large ruts and potholes in the roadway with sand, clay, dirt and gravel so that the road remains accessible for motor vehicles. In September 2013, plaintiffs hired a company to log a portion of their property. They directed a bulldozer operator to bulldoze the entire length of road from the Allen property to plaintiffs' property to smooth the existing route for logging trucks going in and out of plaintiffs' property. As a result of their efforts, many different types and sizes of vehicles can traverse this route without damaging their undercarriage or exterior paint.

The parties disagree about whether plaintiffs can reach their property without relying on the "access road." Defendant says plaintiffs can do so using FR822A. Specifically, defendant says that plaintiffs could drive west on Oswald Road, then turn north onto FR822A, and follow FR822A north and west until it eventually reaches plaintiffs' property. Defendant says the condition of FR822A between Oswald Road and plaintiffs' property is similar to the condition of the access road plaintiffs now use and for which plaintiffs seek confirmation of an easement. Defendant submitted a 16-minute videotape made and narrated by Randy Erickson, a forest land surveyor for defendant, dkt. #9-19, in which Erickson drives the full length of FR822A from Oswald Road to plaintiffs' property in June 2017. He does so in a two-wheel drive Jeep Patriot and asserts that the road has good drainage and is in decent condition from spring into the fall, when it is popular with hunters.

Plaintiffs dispute the accuracy of Erickson's statements in the video and state that the north-south segment of FR822A between Oswald Road and plaintiffs' property does not provide a reasonable, year-round means of access to plaintiffs' property because it is in worse condition than the route by which plaintiffs can reach their property now, which includes the access road. Specifically, plaintiff Edward Ronkowski says that when he drove the north-south segment of FR822A, it was extremely narrow, had deep ruts that filled with water when it rained and had overlapping vegetation that slapped the windshield and sides of his vehicle. (Defendant concedes that water may pool on the road after it rains, but not for much longer than one day.) Plaintiffs say these conditions require drivers to slow to no more than a few miles per hour. Additionally, plaintiffs say FR822A becomes impassable for any vehicle without high clearance and four-wheel drive for a few days after a rain. Finally, plaintiffs say that the route from Oswald Road via FR822A is longer than the route from Blue Moon Road, although they do not say how much longer. (In the video submitted by defendant, Erickson drove the length of FR822A from Oswald Road to the intersection of the access road in approximately six minutes.)

### D.  Historical Evidence of FR822A and the Access Road

Plaintiffs have adduced no evidence that any portion of FR822A or the "access road" between what is now plaintiffs' property and Blue Moon Road existed when Rust-Owen conveyed property to Tony Altobelli in 1919. Maps created before 1919 do not depict any road connecting plaintiffs' property to any public road. Beginning in 1920, various maps

show a road running eastward from the south-eastern corner of plaintiffs' property to Blue Moon Road. Historical maps show the road running in a generally straight line from Blue Moon Road to plaintiffs' property, straddling the section line between Section 7 and Section 18 of Township 44 North, Range 8 or running just south of it. Dkt. ##7-17, 7-15, 15-1.

At some point, the portion of the east-west road that is now known as FR822A began curving northward at the eastern boundary of plaintiffs' property, veering into Section 7, then turning south into Section 18 before leveling out along what appears to be the border of Sections 7 and 18. The segment of FR822A that runs southward to Oswald Road appears on maps as early as 1938, although the road was not officially designated as a public Forest Service road until 2008. Dkt. #7-16.

At the time Rust-Owen conveyed what is now plaintiffs' property to Tony Altobelli in 1918 and 1919, it owned much of the land on which FR822A and the access road now run. However, Rust-Owen did not own an 80-acre parcel in the eastern half of the southwest corner of Section 7, abutting the west side of what is now the Allen property; the company had conveyed that 80-acre parcel to John Johnstone in 1916. (Johnstone conveyed the 80-acre property back to Rust-Owen on August 21, 1931.)

The parties dispute the location of FR822A and the access road during the time that Johnstone owned the 80-acre parcel. Citing a 1920 Wisconsin Historical Society map, plaintiffs say that during Johnstone's ownership of the specified property, the access road was located either just south of the Johnstone property line and through property still owned by Rust-Owen, or on the property line between the Johnstone property and property owned

by Rust-Owen to the south. Dkt. ##7-14, 9-13. Defendant disputes the accuracy of the maps, stating that the actual location of the road is reflected on the more recent survey from 2018, which shows a road running fully onto the former Johnstone property before traveling onto other land now owned by the United States. Dkt. #30-4.

E. Plaintiffs' Efforts to Obtain Confirmation of Easement from Defendant

On May 27, 2008, plaintiff Edward Ronkowski, Jr. submitted an application to the United States Forest Service, seeking "to maintain existing historic road easement the width of a motor vehicle across .56 miles of National Forest Lands to his landlocked 120 acres of private property," and to have the Forest Service "acknowledge this easement appurtenant to his 120 acres for recreation, hunting, forest management, and possible future seasonal dwelling." The application form is titled "Application for Transportation and Utility Systems and Facilities on Federal Lands." Dkt. #7-20. On July 24, 2008, the Forest Service requested additional documentation from Ronkowski to prove that he was unable obtain access from private lands to the north, northwest or southwest of plaintiffs' property. On July 31, 2008, Ronkowski responded that he could not obtain an easement from any owner of private property surrounding plaintiffs' property, and reaffirmed his position that there was an existing easement through Forest Service land.

In July 2008, the Forest Service's website listed a Schedule of Proposed Actions. Among other matters, the Schedule stated that a decision was expected on plaintiff Ronkowski's application by February 2009, and included the notation: "Affects about 2

miles of existing, unclassified road. Some maintenance will be needed." On July 15, 2009, Ronkowski met with Forest Service forest land surveyor Randy Erickson and Forest Service realty specialist Joan Cervenka. At this meeting, Erickson told Ronkowski that the Forest Service had never before received a request to acknowledge an existing easement, and that his application had been processed incorrectly for the previous two years as a request for a special use permit. Erickson also told Ronkowski that he had viewed the 1938 aerial photographs and agreed that they showed the same road that was requested in Ronkowski's application. Erickson offered to inform the Forest Service police not to ticket or arrest Ronkowski for working on the access road.

Between August 2009 and December 2012, the Forest Service asked plaintiff Ronkowski for additional information about his claim to an easement, but made no decision on his application. In 2011, Erickson told Ronkowski he could "continue using as you have." Finally, on August 26, 2016, the Forest Service notified Ronkowski that it did not believe he had "proved [his] claim of an easement of necessity or an easement by implication," and that plaintiffs could obtain access to their property by traveling on FR822A. The Forest Service also advised Ronkowski that continued use and construction on the claimed easement route would violate federal law. Finally, the Forest Service stated that it could consider granting special use authorization to plaintiffs to use the access road. Dkt. #8-13. Plaintiffs have not applied for a special use permit.

## F. Segment of FR822A on Plaintiffs' Property

Beginning in 2008, the Forest Service began publishing maps that identified FR822A as a public road starting at Oswald Road and continuing through plaintiffs' property. Plaintiff Edward Ronkowski, Jr. wrote to the Forest Service in 2008 objecting to the encroachment of FR822A through plaintiffs' property and demanding that all future motor vehicle use maps that did not depict the road inside plaintiffs' property. The Forest Service acknowledged receipt of Ronkowski's objection, but did not change any future motor vehicle use maps. As a result, members of the public began using FR822A more frequently, especially during the fall hunting season. (During the spring and summer, most of the use of FR822A is by people driving all-terrain vehicles.) Some people have crossed through plaintiffs' property while using FR822A, and some individuals have stolen a trail camera, left garbage and urinated on plaintiffs' property.

## OPINION

Plaintiffs seek confirmation under the Quiet Title Act, 28 U.S.C. § 2409a, that: (1) the United States does not have an easement or other right of access to the portion of FR822A that lies within the boundaries of plaintiffs' property; and (2) plaintiffs have an easement, appurtenant to their property, to use the non-public small access road that crosses Forest Service land owned by the United States. I address each claim below.

## A. Segment of FR822A on Plaintiffs' Property

Plaintiffs contend that the United States has infringed their property rights by designating a federal road, FR822A, across their property without providing any compensation to plaintiffs. They seek a declaration that the portion of FR822A that crosses the boundaries of their property is not a legally recognized road and that plaintiffs are entitled to exclusive use of their property.

The undisputed evidence establishes that defendant could have, but did not, follow the procedures for obtaining an easement through non-federal land set forth in 36 C.F.R. § 212.7(b). That regulation permits the United States to acquire easements for roads and trails through "purchase, condemnation, donation, or as a reciprocal for permits or easements." Id. In this instance, defendant began printing maps identifying FR822A as a public road running through plaintiffs' property without obtaining permission from plaintiffs, let alone purchasing, condemning or otherwise negotiating with plaintiffs.

However, in response to plaintiffs' claim, defendant says it is "disclaiming" any interest in those portions of FR822A that lie within the boundaries of plaintiffs' property. Specifically, defendant states in its brief in support of summary judgment that it disclaims "any easement interest, or any other property interest, with respect to any portion of FR822A that occupies the Ronkowski Property." Dft.'s Br., dkt. #21, at 9. Subsequently, defendant filed a document titled "Disclaimer of Interest" to the same effect, signed by Shawn A. Olson, Director of Air, Water, Lands, Soils and Minerals of the Eastern Region of the National Forest Service. Dkt. #31-1. Defendant also states that the Forest Service's

intention is not to show on any future maps "any part of FR822A that lies on the Ronkowski Property." Dft.'s Reply Br., dkt. #31, at 3. Defendant argues that its disclaimer deprives this court of jurisdiction over plaintiffs' claim for declaratory relief under 28 U.S.C. § 2409a(e). That provision states:

> (e) If the United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, which disclaimer is confirmed by order of the court, the jurisdiction of the district court shall cease unless it has jurisdiction of the civil action or suit on ground other than and independent of the authority conferred by section 1346(f) of this title.

28 U.S.C.A. § 2409a(e).

Plaintiffs concede that this court will lose jurisdiction over their quiet title claim if the court confirms defendant's disclaimer, but they maintain that the court should not confirm the disclaimer because it was made in "bad faith." In particular, plaintiffs contend that defendant should have disclaimed an interest in plaintiffs' property in 2008, when plaintiffs first objected to the maps depicting FR822A as crossing plaintiffs' property. They object to allowing defendant to wait until after plaintiffs filed suit before submitting a disclaimer. Additionally, plaintiffs say that there is no guaranty that the Forest Service will cease printing maps that show FR822A running across plaintiffs' property.

The Quiet Title Act itself does not address the circumstances under which a district court should "confirm" a disclaimer, although several courts have considered the question. As the Court of Appeals for the Seventh Circuit has stated, "there is some tension in the case law as to whether a district court, prior to confirming the United States's disclaimer, is to ascertain the validity of the United States's justification for issuing the disclaimer, or

whether confirmation is a mere formality." <u>Samuel C. Johnson 1988 Trust v. Bayfield County, Wisconsin</u>, 520 F.3d 822, 828 (7th Cir. 2008) (comparing <u>Donnelly v. United States</u>, 850 F.2d 1313, 1317 (9th Cir. 1988) (discussing how district court confirmed disclaimer as "valid" in light of United States' proper conveyance of disputed property in accord with governing statute), with <u>W.H. Pugh Coal Co. v. United States</u>, 418 F.Supp. 538, 539 (E.D. Wis. 1976) ("confirmation of the disclaimer of the United States is deemed a formality and one which this court should not deny")). However, the court of appeals stated that "confirmation of a disclaimer could be withheld if the United States were found to have acted in bad faith." <u>Samuel C. Johnson 1988 Trust</u>, 520 F.3d at 834. <u>See also</u> <u>Donnelly</u>, 850 F.2d at 1317 (noting that district court found disclaimer to be made in "good faith"); <u>W.H. Pugh Coal Co.</u>, 418 F. Supp. at 539 (after confirming disclaimer, stating, "If this were a situation in which the state and federal authorities were attempting to whipsaw the plaintiff and to harass it so as to avoid a resolution of this dispute, I would be reluctant to grant the dismissal.").

    In this instance, I conclude that defendant's disclaimer is not made in bad faith and should be confirmed. Plaintiffs have not shown that this is a situation in which defendant was attempting to harass plaintiffs and avoid resolution of a dispute. For example, plaintiffs do not allege that they objected repeatedly to the depiction of FR822A on public maps. Instead, plaintiffs say they objected once, in 2008. Additionally, plaintiffs do not allege that the Forest Service ever responded directly to plaintiffs' objection by claiming any interest in plaintiffs' property. Instead, the Forest Service responded to plaintiffs' objection with a form

letter acknowledging receipt of plaintiffs' communication. It is not clear whether anyone with the Forest Service actually reviewed plaintiffs' objection and considered whether a change should be made to the public maps. Instead, the road appears to have been a low priority for the Forest Service, in light of the fact that no funds have been used to maintain it. Thus, understandable as plaintiffs' frustration is, I cannot conclude that the lack of communication from the Forest Service is evidence of bad faith. Therefore, I will confirm defendant's disclaimer of any easement interest or any other property interest, with respect to any portion of FR822A that occupies plaintiffs' property, which means that this court lacks jurisdiction over plaintiffs' claim relating to the segment of FR822A running across plaintiffs' property. Therefore, that claim will be dismissed for lack of subject matter jurisdiction.

## B. Plaintiffs' Claim for Easement over Federal Land

Plaintiffs' second claim relates to the small, non-public access road that runs through Forest Service land owned by the United States between Eric Allen's property and FR822A. Plaintiffs contend that they have an easement to the access road because (1) the road was historically a public road; and (2) they are entitled to an easement by necessity, implication and prescription. Defendant contends that plaintiffs' claim is barred by the applicable statute of limitations and that, in any event, plaintiffs have no legitimate claim to an easement.

1. <u>Scope of plaintiffs' easement claim</u>

As an initial matter, it is necessary to clarify the scope of plaintiffs' easement claim. Plaintiffs contend that they are seeking confirmation of an easement not only with respect to the small, non-public access road on defendant's property, but also over the segment of road on Eric Allen's property and the segment of FR822A that plaintiffs use to gain access to their property. Plts.' Reply Br., dkt. #27, at 14. However, plaintiffs have not shown the existence of any ripe dispute regarding any segment of road other than the small access road. Instead, plaintiffs concede that they do not need an easement to traverse FR822A, because it is a public road, and they concede also that they have a written easement that permits them to cross Allen's property. Thus, no "case or controversy" regarding access to the Allen property or FR822A exists over which this court would have jurisdiction. <u>Flying J Inc. v. City of New Haven</u>, 549 F.3d 538, 544 (7th Cir. 2008) (court lacks subject matter jurisdiction if there is no case or controversy ripe for review). Moreover, Allen would be a necessary party to any claim for judicial confirmation of an easement burdening his property. Because he is not a party, I will not consider any claim regarding an easement on his property. <u>Richards v. Land Star Group, Inc.</u>, 224 Wis. 2d 829, 851, 593 N.W.2d 103, 112 (Ct. App. 1999) (stating that any landowner affected by requested easement is necessary party). For these reasons, I will consider only plaintiffs' claim for confirmation of an easement across the small access road on defendant's land.

2.  Statute of limitations

The statute of limitations for quiet title suits against the United States is 12 years after a claim "accrues." 28 U.S.C. § 2409a(g).  The statute states that "[s]uch action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States."  Id.  Whether a plaintiff "knew or should have known" of a federal claim of interest in property is governed by a "test of reasonableness":  when would a reasonable person have known that the United States claimed an adverse interest in the property in question.  Wisconsin Valley Improvement Co. v. United States, 569 F.3d 331, 334 (7th Cir. 2009); Kingman Reef Atoll Investments, L.L.C. v. United States, 541 F.3d 1189, 1198 (9th Cir. 2008); Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 738 (8th Cir. 2001); Warren v. United States, 234 F.3d 1331, 1335 (D.C. Cir. 2000); Bank One Texas v. United States, 157 F.3d 397, 402 n. 11 (5th Cir. 1998); Richmond, Fredericksburg & Potomac Railroad Co. v. United States, 945 F.2d 765, 770 (4th Cir. 1991); Knapp. v. United States, 636 F.2d 279, 283 (10th Cir. 1980).

Defendant contends that plaintiffs' easement claim is time-barred because plaintiffs failed to file suit within 12 years of the time they knew or should have known that defendant had an interest adverse to plaintiffs' alleged easement rights. It says that plaintiffs should have known of its adverse interest at any one of three times: (1) 1935, when defendant acquired title to the land on which the access road lies; (2) 1972, when plaintiffs acquired their property, knowing that defendant owned the neighboring properties; or (3) 1985, when the Forest Service erected a gate at the eastern end of the access road, blocking access from

the Allen property through defendant's land. (The parties dispute the existence of the gate, and defendant submitted no evidence that it was the Forest Service or any government agency that erected the alleged gate in 1985. Defendant appears to abandon its argument about the gate in its reply brief, stating that "[w]hether or not a gate ever existed is immaterial." Dkt. #31 at 8. Thus, I will not consider this argument further.) For their part, plaintiffs contend that they did not know and could not have known that defendant had a claim adverse to plaintiffs' until August 26, 2016, when defendant officially denied plaintiffs' request for confirmation of easement rights.

Plaintiffs' argument is more persuasive. Courts have explained that the dispositive question is not just whether the United States had some interest in the land, but whether the United States' interest was "adverse" to the plaintiffs' claimed interest. See, e.g., Wisconsin Valley Improvement, 569 F.3d at 334; F.E.B. Corp. v. United States, 818 F.3d 681, 692–93 (11th Cir. 2016) (citing as "common sense proposition that the statute of limitations is not triggered by just any government interest in property, but rather only a claimed interest that is inconsistent with—that is, adverse to—the plaintiff's asserted interest"). Thus, "when the plaintiff claims a non-possessory interest such as an easement, knowledge of a government claim of ownership may be entirely consistent with a plaintiff's claim." Michel v. United States, 65 F.3d 130, 132 (9th Cir. 1995). See also George v. United States, 672 F.3d 942, 947 (10th Cir. 2012) ("[G]overnment's claim of title to land isn't always and inherently inconsistent with private ownership of an easement over that land. Easements and servient estates can (and usually do) peaceably coexist.") For a

plaintiff to have notice of an adverse interest, there must be facts that would "lead a reasonable person to conclude that the claim of easement was open to question, and thus to prompt inquiry." Wisconsin Valley, 569 F.3d at 334-35. A contrary rule "would lead to premature, and often unnecessary, suits," as citizens currently enjoying access to government land "would be compelled to sue to protect against the possibility, however remote, that the government might someday restrict [their] access." F.E.B., 818 F.3d at 693 (citations omitted). See also Van Den Heuvel Tr. of 1994 v. U.S. Army Corps of Engineers, No. 15-CV-275, 2015 WL 4113328, at *4 (E.D. Wis. July 8, 2015) ("If the limitations period began to run even before knowledge of any adverse interest, there would be a perverse incentive for property owners to file preemptive actions even when there is no reason to believe there is any dispute at all.").

Thus, in Wisconsin Valley, the court held that filings by the Forest Service in proceedings before the Federal Energy Regulatory Commission placed a private company on notice that the Forest Service did not agree that the company had a flowage easement over Forest Service land. Id. See also Michel, 65 F.3d at 131-32 (holding that plaintiffs' "claim of access to roads and trails across the refuge did not accrue until [they] knew or should have known the government claimed the exclusive right to deny their historic access to the trails and roads across the refuge"); Werner v. United States, 9 F.3d 1514, 1516-17 (11th Cir. 1993) (finding plaintiff's Quiet Title Act action for easement across government property accrued not when plaintiff knew government owned property in general, but when plaintiff realized government claimed title without access easement).

In this case, there is no evidence that plaintiffs had notice that defendant's ownership of the land was adverse to plaintiffs' use of the access road until defendant denied plaintiffs' request for confirmation of an easement in 2016, or, at the very earliest, when defendant failed to promptly approve plaintiffs' request for confirmation of an easement in 2008. Until then, plaintiffs had no reason to believe that defendant objected to their use of the road. No government official had directed plaintiffs to stop using the road and no barriers or signs had been erected by defendant; in fact, Forest Service employee, Randy Erickson, had told plaintiff Edward Ronkowski as late as 2011 that he should continue using the road as he had been. Therefore, the statute of limitations on plaintiffs' Quiet Title Act claim did not begin to run until 2008 at the earliest and plaintiffs' claims are not barred by the 12-year statute of limitations.

3. Legal right to an easement

Although plaintiffs' claim is not time-barred, they must still prove that they are legally entitled to an easement. Plaintiffs seek declaration of an easement under four alternative legal theories: (1) easement by statute because the access road is a public road that has not abandoned; (2) easement by necessity; (3) easement by implication; and (4) easement by prescription. Both sides agree that although plaintiffs' easement claims are brought under the Quiet Title Act, they are governed by Wisconsin law, so long as state law does not conflict with the federal purposes of the United States' property ownership. Dft.'s Br., dkt. #21, at 7; Plts.' Br., dkt. #12, at 7. Thus, I will apply Wisconsin law to plaintiffs' easement

claims.  <u>Hoyt v. Benham</u>, 813 F.3d 349, 353 (7th Cir. 2016) (applying Indiana law to claim for easement brought under Quiet Title Act).

a.  Public right of way

Plaintiffs say that when defendant acquired its property in 1935, the "access road" had been "mapped as a public road" in local maps of the area.  Plts.' Br., dkt. #12, at 12. They contend that because their predecessors in interest had been using this "public road" as a right of way to gain access to their property, defendant took ownership of its property subject to the right of way.  <u>Id.</u>  Plaintiffs argue that they are entitled to "an easement by statutory law as a town road that has not been abandoned."  <u>Id.</u> at 21.

Plaintiffs do not specify the "statutory law" that supports their claim of an easement over a "town road."  Instead, they cite several Wisconsin state court cases involving disputes about whether public roads have been abandoned by a municipality or converted to private roads.  <u>E.g.</u>, <u>City of Jefferson v. Eiffler</u>, 16 Wis. 2d 123, 113 N.W.2d 834 (1962); <u>Town of Schoepke v. Rustick</u>, 2006 WI App 222, 296 Wis. 2d 471, 723 N.W.2d 770;  <u>Markos v. Schaller</u>, 2003 WI App 174, 266 Wis. 2d 470, 668 N.W.2d 755; <u>Lange v. Tumm</u>, 2000 WI App 160, 237 Wis. 2d 752, 615 N.W.2d 187.  However, these cases are not on point for two reasons.  First, plaintiffs have not shown that the access road at issue in this case was ever platted or designated as a "public road" or "public highway" under Wisconsin law. Second, the cited cases are not about easements, but about whether a road is even open to the public.  This makes sense.  A member of the public would not generally need an

easement to gain access to a "public" road.  Moreover, plaintiffs cannot bring a claim under the Quiet Title Act for a declaration that a road qualifies as a public road under state law. Southwest Four Wheel Drive Assn. v. Bureau of Land Management, 363 F.3d 1069, 1071 (10th Cir. 2004) (members of public cannot claim title in public roads and therefore cannot maintain Quiet Title action regarding public road); Long v. Area Manager, Bureau of Reclamation, 236 F.3d 910, 915 (8th Cir. 2001) (right of individual to use public road is not right or interest in property for purpose of Quiet Title Act); Alleman v. United States, 372 F. Supp. 2d 1212, 1226 (D. Or. 2005) (plaintiffs' interest as members of public is "insufficient to bring an action to have the roads declared" public highways under Quiet Title Act).

Plaintiffs state in their reply brief that they are not seeking a declaration that the access road is a "public road" under Wisconsin law, but merely a declaration that plaintiffs themselves have an easement over the access road.  However, they do not explain how any of their arguments about the "public" nature of the road or their citations to various cases involving disputes about public highways are relevant to their easement claim.  Therefore, plaintiffs have not shown they are entitled to an easement based on a theory that the access road is a public road that has not been abandoned.


b.  Easement by necessity

Next, plaintiffs argue that they have a claim for easement by necessity.  Easements by necessity are generally sought "when an owner of a landlocked property wants public

highway access and has been unable to obtain it from an adjoining landowner." McCormick v. Schubring, 2003 WI 149, ¶ 9, 267 Wis. 2d 141, 148, 672 N.W.2d 63, 66. In Wisconsin, a property owner seeking declaration of an easement by necessity must prove the following elements: (1) common ownership of the proposed servient and dominant estates at the time of the severance that created the landlocked condition; and (2) the landlocked parcel had no access to a public roadway after it was severed and such lack of access continues. Id., at ¶ 11, 267 Wis. 2d at 149, 672 N.W.2d at 66-67. If they can make this showing, courts then consider any additional relevant factors and weigh the burdens and benefits the easement would create. Id. at ¶ 16.

Defendant contends that plaintiffs' claim fails on the first factor because plaintiffs have not shown common ownership of defendant's property (the proposed servient estate) and plaintiffs' property (the proposed dominant estate) at the time plaintiffs' property became landlocked in 1919, when it was conveyed by Rust-Owen Lumber Company. Instead, the evidence shows that between 1916 and 1931, a portion of the proposed servient estate on which the access road lies was owned by John Johnstone, not Rust-Owen.

Defendant is correct that starting in 1920 a road depicted on maps appears to run on or across portions of property owned by Johnstone between 1916 and 1931. In particular, the Johnstone parcel encompassed the eastern half of the distance from what is now the Allen property to plaintiffs' property. As depicted on plaintiffs' survey, the Johnson parcel was the eastern half of the land lying between the two dashed lines running north-south on the survey. Dkt. #30-4. The survey also shows that the route plaintiffs now use to gain

access to their property runs through the former Johnstone parcel. Thus, defendant argues, plaintiffs cannot show a history of common ownership of the land in dispute. Accordingly, plaintiffs have no right to an easement by necessity over any portion of the former Johnstone parcel.

However, it is not clear from the parties' arguments or the maps they have submitted whether the segment of road running through the former Johnstone parcel is the current FR822A or the small "access road" over which plaintiffs seek an easement. Plaintiffs' recent survey shows that the access road may fall south of the former Johnstone parcel, in Section 18, on land that was owned by Rust-Owen at the time plaintiffs' parcel was severed in 1918 and 1919. Dkt. #30-4. If this is the case, plaintiffs' claim could still satisfy the common ownership element of their easement claim.

Even if this is true, plaintiffs cannot show that the easement is necessary for them to have access to a public roadway from their property. Under Wisconsin law, "[a]n easement by necessity continues only as long as the need for it continues to exist." Jorns v. Fischer, 2010 WI App 159, ¶ 9, 330 Wis. 2d 497, 792 N.W.2d 240 (unpublished) (citing Niedfeldt v. Evans, 272 Wis. 362, 364-65, 75 N.W.2d 307 (1956)). Thus, "if the owner of landlocked property acquires another way to access the property, any previously granted easement by necessity will terminate." Id. In this instance, plaintiffs can reach their property using FR822A from Oswald Road, as is confirmed by defendant's video showing Randy Erickson traveling the entire length of FR822A from Oswald Road to plaintiffs' property, as well as by evidence that other members of the public use FR822A.

Plaintiffs say that FR822A is not a good alternative because it is bumpy, overgrown with vegetation that can scratch vehicles and has deep ruts that can make the roadway impassable after a heavy rainfall. However, much of plaintiffs' evidence and argument regarding the condition of FR822A relates to a portion of FR822A that runs to the west of plaintiffs' property. Plts.' Br., dkt. #12, at 17. Because plaintiffs would not need to use that western segment of road to get to their property, its condition is irrelevant.

Plaintiffs' only evidence relating specifically to the north-south segment of FR822A that plaintiffs would travel to reach their property from Oswald Road is plaintiff Edward Ronkowski, Jr.'s statement that "[w]hen [he] ha[s] tried to drive down this segment of FR822A, the road is extremely narrow, contains many deep ruts, and is replete with overlapping vegetation that slaps the windshield and sides of [his] vehicle." Ronkowski Aff., dkt. #15, ¶ 57. These statements are too vague to create a genuine dispute about whether FR822A provides an adequate alternative route, however, because Ronkowski does not say how often he has tried to drive down this segment of road, what type of vehicle he was driving or when he most recently attempted to drive it. Ronkowski also submitted two photographs from July and August 2017 of this segment of road, but they are not helpful. One photograph shows a dirt road with a large puddle in it, dkt. #15-8, while the other shows a dirt road with small branches growing across it. Dkt. #15-7. Neither picture shows a road that appears to be impassable, at least for a vehicle with sufficient clearance. Additionally, plaintiffs provide no information about where in particular the photographs were taken. Thus, although plaintiffs argue repeatedly that FR822A does not provide an

acceptable route, they have not submitted evidence sufficient to create a genuine factual dispute on this issue.

Moreover, "[a]n easement of necessity . . . is not merely one of convenience." Richards v. Land Star Group, Inc., 224 Wis. 2d 829, 850, 593 N.W.2d 103, 112 (Ct. App. 1999) (citing Backhausen v. Mayer, 204 Wis. 286, 288, 234 N.W. 904, 905 (1931)). "Wisconsin courts have consistently held that geographic barriers alone are insufficient to warrant an easement by necessity." Jorns, 2010 WI App 159, ¶ 12, 330 Wis. 2d 497, 792 N.W.2d 240 (citing Schwab v. Timmons, 224 Wis.2d 27, 39, 589 N.W.2d 1 (1999). For example, in Schwab, the Wisconsin Supreme Court rejected an argument that a property was landlocked because of cliffs and rocky terrain between the property and a public road. The Court stated that although "it may be more convenient for the petitioners to seek an extension of the private road to their parcels rather than travel across the property above the bluff and navigate the bluff," convenience alone "does not create the right to an easement by necessity." Id. "A grantor is not landlocked when he or she has difficulty getting from his or her land to a public road as long as he or she can get from his or her land to a public road." Id. Applying the reasoning from Schwab to this case, I conclude that plaintiffs have not shown that they need an easement on the small access road to reach a public road. Although reaching Oswald Road by using FR822A may be inconvenient, difficult or require a high clearance vehicle, plaintiffs have submitted no evidence that it is impossible.

c. Easement by implication

Next, plaintiffs argue that they are entitled to an easement by implication. Easements by implication are generally disfavored in Wisconsin. Schwab, 224 Wis. 2d at 36, 589 N.W.2d at, 6; House v. Pasko, 2010 WI App 120, ¶ 6, 329 Wis. 2d 270, 789 N.W.2d 754 (unpublished) (citing Bullis v. Schmidt, 5 Wis. 2d 457, 460-61, 93 N.W.2d 476 (1958)). Under Wisconsin law, easements by implication are "similar" to easements by necessity, but are "legally distinguishable concepts." Schwab, 224 Wis. 2d at 36, 589 N.W.2d at 6. "An easement by implication arises when there has been a 'separation of title, a use before separation took place which continued so long and was so obvious or manifest as to show that it was meant to be permanent, and it must appear that the easement is necessary to the beneficial enjoyment of the land granted or retained.'" Id. (citation omitted). Additionally, "[i]mplied easements may only be created when the necessity for the easement is 'so clear and absolute that without the easement the grantee cannot enjoy the use of the property granted to him for the purposes to which similar property is customarily devoted.'" Id. (citation omitted).

The first question then, is whether plaintiffs have shown prior to the severance of their property from the larger tract, the use of the small road then owned by Rust-Owen Lumber Company was "so obvious, manifest or continuous as to show that it was meant to be permanent." Id. at 37. The second question is whether plaintiffs have shown a "clear and absolute" necessity for an easement over the small access road. Id. Plaintiffs have not submitted evidence sufficient to satisfy their burden on either question.

First, there is no evidence that the small access road even existed before the severance of plaintiffs' property in 1918 and 1919 from the larger tract, let alone that use of the road was so "obvious, manifest or continuous to show that it was meant to be permanent." In their reply brief, plaintiffs concede that the access road "was not depicted on any map" before the severance, but argue that from the location of public roads at the time, it "may easily be concluded that" users of the land now owned by plaintiffs must have traveled along the access road to reach a public road. Plts.' Reply Br., dkt. #27, at 20. An argument based on speculation and unsupported by any factual basis or supporting evidence about the existence, location and use of the access road before 1918 is not sufficient to withstand summary judgment.

Additionally, plaintiffs have not shown a clear and absolute necessity for an easement by implication. For the same reasons discussed above, plaintiffs have not shown that it is impossible to gain access to their property by traveling on FR822A from Oswald Road. Moreover, "a clear and absolute necessity" "does not exist where an alternative means to enjoy the land may be acquired for a reasonable sum." House, 2010 WI App 120, ¶ 7, 329 Wis. 2d 270, 789 N.W.2d 754. Defendant has offered plaintiffs the opportunity to apply for a special use permit to use the access road, as well as to perform maintenance work on the access road and the portion of forest roads plaintiffs use to reach their property. (The current cost of a special use permit is not clear from the record, although defendant offered plaintiffs the opportunity to apply for a permit in 2007 for $375.) This opportunity to gain access by obtaining a special use permit is another reason plaintiffs cannot establish a right

to easement by implication.

d.  Easement by prescription

Finally, plaintiffs argue that they have a prescriptive easement over the access road. In Wisconsin, an individual claiming an easement by prescription must show: "(1) adverse use hostile and inconsistent with the exercise of the titleholder's rights; (2) which is visible, open and notorious; (3) under an open claim of right; (4) and is continuous and uninterrupted for twenty years." Ludke v. Egan, 87 Wis. 2d 221, 230, 274 N.W.2d 641, 646 (1979). Plaintiffs contend they have a prescriptive easement because there has been "hostile and open use of the access road which continued for a period in excess of 20 years," Plts.' Br., dkt. #12, at 21, but the Quiet Title Act precludes plaintiffs' claim for a prescriptive easement against the United States. It states that "[n]othing in this section shall be construed to permit suits against the United States based upon adverse possession." 28 U.S.C. § 2409a(n). Courts have interpreted this provision as prohibiting claims of easement by prescription, because prescriptive easements are created by "adverse" use. Hoyt v. Benham, 813 F.3d 349, 353 (7th Cir. 2016) ("[E]asements (called "prescriptive") can't be acquired over federal land."); United States v. Vasarajs, 908 F.2d 443, 447 (9th Cir. 1990) ("[P]rescriptive rights cannot be obtained against the federal government."). The one possible exception is that a prescriptive easement against the United States might exist if the United States acquired land already burdened by a prescriptive easement. Hoyt, 813 F.3d at 353 ("[T]he federal government can purchase land that is already subject to a prescriptive

easement.").  However, plaintiffs state expressly that they are not arguing that a prescriptive easement existed at the time the United States purchased the property, Plts.' Reply Br., dkt. #27, at 22, presumably because plaintiffs' property had been owned for a period of only 15 years by the time the United States acquired its property from Rust-Owen in 1935.  Because plaintiffs cannot obtain an easement by adverse use against the United States directly, their claim to a prescriptive easement fails.

In sum, plaintiffs have not shown that they are entitled to any easement over the access road under any legal theory.  Accordingly, I will deny plaintiffs' motion for summary judgment on their easement claim and grant defendant's motion.

ORDER

IT IS ORDERED that

1.  Defendant United States of America's disclaimer of interest, dkt. #31-1, is CONFIRMED under 28 U.S.C. 2409a(e).

2.  Defendant's motion for summary judgment, dkt. #20, is GRANTED.

3.  Plaintiffs Edward E. Ronkowski, Jr. and Joann Ronkowski's motion for summary judgment, dkt. #11, is DENIED.

4.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 23d day of May, 2018.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge